**IN THE COURT OF APPEALS OF IOWA**

No. 24-0418
Filed July 23, 2025

**IN THE MATTER OF THE GUARDIANSHIP OF JEFFREY ERICKSON,**

**JEFFREY ERICKSON,**
         Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Katie Ranes, Judge.


        A protected person appeals the district court order establishing a limited guardianship for him and appointing his mother as his guardian. **AFFIRMED.**



        Kevin Cunningham of Cunningham & Kelso, P.L.L.C., Urbandale, for appellant.

        Edward Fishman of Fishman Law Firm, Des Moines, for appellee.


        Considered without oral argument by Greer, P.J., and Langholz and Sandy, JJ.

**SANDY, Judge.**

A protected person appeals the district court order establishing a limited guardianship for him and appointing his mother as his limited guardian. He contends the evidence was insufficient to establish that his decision-making capacity is so impaired that he is unable to care for his personal safety or provide necessities for himself. Consequently, he argues the district court erred by establishing a limited guardianship for him.

Because we conclude substantial evidence supports the district court's finding that a limited guardianship was necessary, we affirm.

## I. Background Facts and Proceedings

The protected person is a forty-three-year-old man who has frequently struggled with his mental health.[1] His struggles with mental health date back to his adolescent years, when he began experiencing "major depression" and a "very debilitating anxiety disorder." At twenty-five, he was diagnosed with bipolar disorder type I. He has also been diagnosed with a "cluster B personality disorder." Over the years, he has been involuntarily committed numerous times for psychiatric treatment for episodes of acute psychosis, anxiety, and mania. The protected person has lived with his mother for the past eight years. He is currently unemployed and has historically been unable to hold a job for more than two to three weeks.

Over the last several years, the protected person's mental health has progressively gotten worse. According to his mother, he has experienced "psych

---

[1] Out of respect for this individual's privacy, we refer to him throughout this opinion as the "protected person."

events" with increasing frequency. Generally, these events vary in length from two to seven weeks. In his mother's words, during such events:

> [H]e becomes manic which means he is up for two, three days at a time very energized. His thinking is very impaired. He makes poor decisions. He gets very paranoid. He can become—or almost always becomes agitated and destructive, does a lot of destruction around the house, and is threatening to me and scary. He damages the house and kind of runs around the neighborhood. Like I said, very distorted thinking.

In the past two years, the protected person has been involuntarily committed for psychiatric treatment eight times, including twice in the three months preceding the hearing on his mother's petition for a limited guardianship. And as his mother testified at the hearing, his level of functioning continues to decline following a "psych event." As she put it, "It used to be when he's going to the hospital or even prior to being hospitalized—you know, it used to be that he could get almost back to his baseline, which is very, very, very high functioning. But over the years that baseline keeps getting lower, I believe."

Amid a "psych event," the protected person is incapable of making medical decisions for himself. Even when he is not experiencing a "psych event," he relies on his mother to remind him of and take him to his medical appointments. In his mother's view, he is unlikely to "get to a point where he doesn't need someone there for him."

But as his mother alluded to in her testimony at the hearing, when the protected person is not experiencing a "psych event," he functions at a high level. He graduated high school and attended some college. He does not need assistance to bathe or dress himself, and he can prepare his own food. And his mother generally does not sit in on his medical appointments. During the hearing

on her petition, the mother also expressed her belief that the protected person should retain the right to vote and make the decision of whether to marry.

Due to the protected person's declining mental health over the last several years, his mother filed a petition to establish a limited guardianship for him. The mother's petition requested that she be granted the limited powers to "access [the protected person's] medical history and records, to communicate with [his] medical professionals, and to consent to and arrange for medical, dental, and other healthcare treatment and services for [him]." The district court held a hearing on the mother's petition in February 2024. During the hearing, the district court heard testimony from the mother and admitted into evidence two psychiatric reports.[2] Of note, both reports were written during the protected person's involuntary commitment—a month prior to the hearing—at Broadlawns Medical Center in Des Moines.

One of the reports admitted into evidence was a psychiatric evaluation performed by a psychiatric mental health nurse practitioner (nurse practitioner). In her evaluation, the nurse practitioner noted the protected person was displaying aggressive behavior and delusional thinking during his commitment. She also opined in her evaluation that the protected person was incapable of making responsible decisions concerning his treatment due to "poor judgment and insight." Additionally, she documented her belief that he was "likely to physically injure self or others" if he did not receive treatment. She indicated that, in her view, the

---

[2] During the mother's testimony, she explained she did not pursue requesting the protected person to grant her power of attorney in order to access his medical history due to his history of revoking consent for her to access his medical records.

protected person was incapable of satisfying his "needs for nourishment, clothing, essential medical care or shelter," such that he was likely to suffer physical injury, debilitation, or death. Finally, she wrote that he has a history of hospitalizations "due to nonadherence to medications" and would likely need ongoing "oversight of [his] medication administration."

Following the hearing, the district court issued its order establishing a limited guardianship for the protected person and appointing his mother as his limited guardian. The district court's order granted his mother the limited powers to (1) make "decisions regarding the care, maintenance, health, education, welfare, and safety" of him; and (2) consent to and arrange for "medical, dental, and other health care treatment and services" for him. However, the protected person retained the right to vote and independently make the decision to marry.

This appeal followed.

## II. Standard of Review

"Actions for appointment of a guardian are triable at law and, therefore, are reviewed for errors at law." *In re Guardianship of Williams*, No. 11-2025, 2012 WL 5355865, at *1 (Iowa Ct. App. Oct. 31, 2012); *see* Iowa Code § 633.33 (2024). "Findings of fact in a law action have the effect of special jury verdict and are binding on us if supported by substantial evidence." *In re Conservatorship of Deremiah*, 477 N.W.2d 691, 693 (Iowa Ct. App. 1991). "Evidence is substantial or sufficient when a reasonable mind would accept it as adequate to reach the same findings." *Id*. However, "[e]vidence is not insubstantial merely because it would have supported contrary inferences." *Grinnell Mut. Reinsurance Co. v. Voeltz*, 431 N.W.2d 783, 785 (Iowa 1988). Finally, [i]n case of doubt or ambiguity we construe

the findings to uphold, rather than defeat, the [district] court's judgment." *Deremiah*, 477 N.W.2d at 693.

## III.    Analysis

The protected person asserts his mother "failed to prove by clear and convincing evidence that [his] decision-making capacity is so impaired at times that he is unable to care for his safety or provide for necessities, such as food, shelter, clothing, or medical care without which physical injury or illness may occur." Consequently, he argues the district court erred in establishing a guardianship for him and appointing his mother as his guardian.  While he acknowledges that his functioning is impaired during "psych events," he points out that these events do not occur all the time.  He contends he can perform many functions when he is not experiencing a "psych event."  Additionally, he notes that he is capable of bathing, dressing, and preparing food for himself.  As he puts it, "[a] person like [him] who, according to [his mother], cannot function at times, but can perform many functions at other times is not sufficient to remove [his] rights to make decisions regarding his . . . medical needs."  We disagree and conclude substantial evidence supports the district court's finding that a limited guardianship was necessary.

The petitioning party bears the burden of proving the guardianship is necessary and must do so by clear and convincing evidence.  Iowa Code § 633.551(1), (2).  Clear and convincing evidence "means there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence."  *In re M.S.*, 889 N.W.2d 675, 679 (Iowa Ct. App. 2016).  The district court may establish a guardianship for an adult when "the decision-making capacity of the respondent is so impaired that the respondent is unable to care for

the respondent's safety, or to provide for necessities such as food, shelter, clothing, or medical care without which physical injury or illness may occur." Iowa Code § 633.552. This requires proof

> showing that the ward or proposed ward is unable to think or act for himself or herself as to matters concerning the ward's personal health, safety, and general welfare. In addition, the district court's findings of fact based upon this evidence should support the powers conferred on the guardian. These powers should be articulated as clearly as each case permits.

*In re Guardianship of Hedin*, 528 N.W.2d 567, 579 (Iowa 1995) (cleaned up) (internal citations omitted). In determining whether a guardianship should be established, the district court is required to also consider the appropriateness of a limited guardianship. *In re Guardianship of Evans*, No. 16-2192, 2017 WL 4570438, at *4 (Iowa Ct. App. Oct. 11, 2017).

Applying these principles, we conclude substantial evidence supports the district court's determination that establishing a limited guardianship was necessary for three reasons. First, there is evidence in the record that suggests the protected person does not appreciate the severity of his mental-health issues. In the nurse practitioner's psychiatric evaluation—written during his involuntary commitment one month prior to the hearing on his mother's petition—she indicated her belief that he was incapable of making responsible medical decisions for himself due to "poor judgement and insight." Additionally, in a psychiatric progress report—the second report admitted into evidence and written during the same commitment—the protected person is documented to have been "minimizing" and "superficially cooperative."

We understand these observations to mean that the protected person does not fully understand or acknowledge how serious his mental-health issues are. And we have previously found that an individual's failure to appreciate the severity of their mental illness constitutes substantial evidence in support of a guardianship. *See In re Guardianship of B.Z.*, No. 19-1761, 2020 WL 4499037, at *3 (Iowa Ct. App. Aug. 5, 2020) (concluding the respondent's failure to appreciate the seriousness of her mental illness constituted substantial evidence that "her capacity for decision making is severely impaired").

Second, the evidence shows the protected person has a history of being involuntarily committed for failure to take his prescribed mental-health medications. In her evaluation, the nurse practitioner noted the protected person has a history of "several hospitalizations due to nonadherence to medications." Further, in the same evaluation, she wrote that he "will require ongoing supervision, and oversight of medication administration." Both of these facts are relevant considerations and add support to our conclusion that establishing a limited guardianship is supported by substantial evidence. *See In re R.H.*, No. 19-0007, 2019 WL 4297878, at *2 (Iowa Ct. App. Sept. 11, 2019) (concluding a guardianship for a proposed ward was necessary, in part, due to his failure to take his mental health medications); *see also See In re Guardianship of S.M.P.*, No. 20-0946, 2021 WL 5105869, at *2 (Iowa Ct. App. Nov. 3, 2021) (concluding a guardianship was supported by substantial evidence where a neuropsychologist recommended that the proposed ward would require "someone else [to] oversee all medications to ensure they are being taken as prescribed").

Third, while it is undisputed that the protected person can perform some basic functions by himself, we note that he is reliant on his mother for shelter, financial support, and numerous daily tasks.[3] He is currently unemployed and has lived with his mother for the past eight years. Additionally, he is reliant on his mother for tracking his medical appointments as well as transportation to such appointments. And his mother testified that she believed he was unlikely to get to a point where he would not need "someone there for him." These facts bolster our conclusion that substantial evidence supports the establishment of a limited guardianship. *Cf. In re Guardianship of Feistner*, No. 17-2108, 2018 WL 49113669, at *2 (Iowa Ct. App. Oct. 10, 2018) (concluding insufficient evidence supported the establishment of a guardianship where a woman "could provide for herself and live on her own," had a full-time job, and her brother testified that "[s]he could function on her own").

For these reasons, we conclude substantial evidence supports the district court's finding that establishment of a limited guardianship was necessary.

## IV.     Conclusion

Because we find substantial evidence supports the district court's finding that a limited guardianship was necessary, we affirm.

**AFFIRMED.**

---

[3] Additionally, while the protected person claims that he can perform many functions when he is not experiencing a "psych event," we find his mother's testimony that his "baseline" level of functioning continues to decline following such events significant.